[No. B033455. Second Dist., Div. Three. May 23, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHNNY SUYNY SUK, Defendant and Appellant.

954

**COUNSEL**

Alan Baum and Andrew E. Rubin, under appointments by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Linda Johnson and Peggy S. Ruffra, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**DANIELSON, J.**—Johnny Suyny Suk (defendant) appeals from a judgment of conviction following a jury trial at which he was found guilty as charged in a one count information of violating Vehicle Code section 10752 which prohibits the sale or offer to sell, with intent to defraud, of a manufacturer's serial or identification number (VIN) from or for a vehicle.

We affirm the judgment.

In this decision we hold that (1) Vehicle Code section 10752 is not unconstitutional for vagueness nor for overbreadth, and (2) the court did not err in ordering the information to be amended for a defect after the prosecution had rested since the defendant was not prejudiced thereby.

## PROCEDURAL STATEMENT

Vehicle Code section 10752 provides, in pertinent part: "(a) No person shall, with intent to prejudice, damage, injure, or defraud, acquire, possess, sell, or offer for sale any genuine or counterfeit manufacturer's serial or identification number from or for, or purporting to be from or for, a vehicle or component part thereof."

Defendant and another[1] were charged in an information which read: "On or about March 11, 1987, in the County of Los Angeles, the crime of POSSESSION/SALE of COUNTERFEIT VIN NUMBER, in violation of VEHICLE CODE SECTION 10752, a Felony, was committed by JOHNNY S. SUK and JONG SUNG KIM, who did willfully, unlawfully and with intent to prejudice, damage, injure and defraud; acquire, possess, sell and offer to sell a manufacturer's serial or identification number which is from or for, or purports to be from or for, a vehicle or component part thereof."

Prior to trial, defendant demurred to the information on the ground Vehicle Code section 10752 is unconstitutionally vague. The court overruled the demurrer and denied his subsequent motion to dismiss (Pen. Code,[2] § 995) made on the ground his actions were outside the scope of, and did not constitute, a violation of Vehicle Code section 10752.

At the close of the prosecution's case the court denied defendant's motion for judgment of acquittal (§ 1118.1) made on the ground the evidence showed that the VINs in question were genuine, not counterfeit as charged in the information and therefore the evidence was insufficient to sustain a conviction. On its own motion, the court amended the information to read "SALE OF GENUINE VIN NUMBER/OFFER TO SELL GENUINE VIN NUMBER" instead of "POSSESSION/SALE OF COUNTERFEIT VIN NUMBER." The words "acquire" and "possess" were also stricken from the information.

After his conviction, defendant's motion for a new trial on the ground of insufficient evidence was denied. He was sentenced to 3 years' probation on

---

[1] Codefendant Jong Sung Kim (Kim) was found not guilty.
[2] All further section references are to the Penal Code unless otherwise indicated.

condition he serve 90 days in jail, perform 300 hours of community service and pay a $2,000 fine.[3]

## FACTUAL STATEMENT

On March 9, 1987, Los Angeles Police Department Detective Gary Redel (Redel), working undercover, went to "AMC Salvage," a huge vehicle wrecking yard, in Wilmington, primarily for AMC products. He contacted defendant, an owner of the yard, and told him that he had several 1985 CJ5 Jeeps and wanted to buy "jeep parts and paperwork." Redel did not use the word "stolen" but he did say he was having trouble with "the numbers" and could not get paperwork, and he needed to generate paperwork. Redel first told defendant that he wanted the papers and parts of Jeeps but then "it broke down to that I was only interested in numbers and the paperwork." A reasonable inference could be drawn that the Jeeps were stolen.

Redel said he was looking for a 1985 CJ5 model Jeep. There were no 1985 CJ5's although there were 1985 CJ7's and a 1984 CJ5. Redel was interested in the 1984 CJ5 model. The frame on that vehicle was bent, but Redel did not care if it was bent. He asked what the cost was for "four numbers and a bill of sale. And . . . the paperwork that went along with the purchase of those parts." Defendant replied, $1,500.[4]

Defendant initially insisted that he could sell only the entire frame even though Redel wanted only the small section with the VIN, because, defendant stated, he was concerned he would get in trouble with the police and the Department of Motor Vehicles (DMV) if he did not sell the whole frame. However, he changed his mind and agreed to the sale.

Redel bent down and with his fingers pointed out how much of the frame on each side of the number he wanted and stated, " 'I want this number cut out at this length, because when I go to put this number in my Jeep, I don't want any grind marks to filter over onto the number. I want plenty of distance.' " Redel testified that when you cut a number out of a frame, and replace it with another number, or another section of the frame identical to what you just cut out, it has to be welded in; and when you hide weld marks

---

[3] Vehicle Code section 10752, subdivision (c), provides: "Every person convicted of a violation of subdivision (a) or (b) shall be punished by imprisonment in the state prison, or in the county jail for not less than 90 days nor more than one year, and by a fine of not less than two hundred fifty dollars ($250) nor more than five thousand dollars ($5,000)."

[4] The four numbers that are found on a car are the complete seventeen-digit windshield VIN, the seventeen-digit number attached to a tag on the firewall, another seventeen-digit number on a tag imprinted on paper that is glued to the foot panel and the sequential serial number on the frame, consisting of two letters, followed by six numbers which are identical with the last six digits of the other three numbers.

you have to grind the weld marks down to be flat with the existing frame before you paint over it "and you can't afford to have a lot of grind marks right next to the number." Defendant said he understood what Redel was talking about. He said that he did not cut the parts himself, but would make sure it was done the way Redel wanted.

Redel also exhibited concern over the "rosette rivets," which are used to attach the VIN in the windshield area, and "you just can't go buy these" anywhere. Defendant said he understood because he had done this before, and that he would leave that VIN tag attached to the metal with the rosette rivets.

Defendant said he would have to get rid of the Jeep that night or the next day. Defendant then said he could not finish that night, it was too late, in response to Redel's request the parts be cut up small enough to fit into his Toyota car. Redel replied he could not pick up the parts for two days, a Wednesday.

Redel returned two days later and contacted codefendant Kim, who was defendant's brother-in-law. Several large auto parts had been set aside for Redel. He told Kim the pieces were too big to fit in his car. Kim said the problem would be taken care of, and an employee took the parts away to cut them into small pieces with a torch. Redel told the employee how he wanted them cut up. After paying for the parts, he asked Kim if they could do "more of this." Redel said he could get more Jeeps, and would simply need more "numbers and papers." Kim agreed this could be done.

Redel received a bill of sale for a salvaged 1984 AMC Jeep, complete, front end, windshield frame, and body frame with VIN, for $1,500. The bill of sale was marked "for resale."

The VINs on the Jeep parts bought by Redel were genuine factory numbers.

Defendant did not testify in his own defense. Instead, he presented character evidence and evidence to show what was offered for sale to Redel was common practice in the industry. Several people including Ben Choi, a minister, Sandor Kovacs, a businessman, and Dennis Reese, an accountant, attested to defendant's honesty, both through personal belief and reputation.

DMV investigator Merle Land testified that salvage, or dismantling, yards such as the one run by defendant and Kim are required to enter all of the vehicles they acquire for dismantling in a "buy," or "acquisition," book,

and then to record the sale of any of the parts from that vehicle, showing to whom sold and the identification number, and the identification number should also be on the bill of sale.

Although dismantling yards are supposed to sell entire pieces, e.g., the entire frame rather than a part of it, it is common practice in the industry to sell a part of a frame.

## ISSUES

On appeal defendant claims Vehicle Code section 10752 is unconstitutionally vague and overbroad. He also asserts the trial court erred in allowing the prosecution to amend the information to conform to proof during trial.

We reject defendant's contentions as meritless.

## DISCUSSION

### I.   *Constitutionality of Vehicle Code Section 10752*

Defendant makes two arguments in support of his position that Vehicle Code section 10752 is unconstitutionally overbroad and vague.

First, he argues Vehicle Code section 10752 impermissibly "invests the police agency with almost unbridled discretion in arresting and prosecuting persons and thereby gives insufficient notice to the general public as to what type of conduct violates that section." (See *Kolender* v. *Lawson* (1983) 461 U.S. 352, 357 [75 L.Ed.2d 903, 908-909, 103 S.Ct. 1855]; *Smith* v. *Goguen* (1974) 415 U.S. 566, 574, 575 [39 L.Ed.2d 605, 612-613, 613, 94 S.Ct. 1242].)

Defendant contends, in his opening brief, that his "conviction in this case cannot stand because it is impossible to tell what is prohibited by the statute unless the statute is read so that it [prohibits only] the sale of the VINs themselves (without a part of the car attached) . . . . By allowing a broader construction[,] so that the [statute prohibits the] delivery of full parts of a vehicle which can then be cut down by the *buyer* (or as here, at the buyer's direction), the net becomes too broad and the officer is endowed with exactly the type of almost unbridled discretion which the Constitutions of California and the United States prohibit." (Italics in original.)

Defendant's position is remindful of the classic mandate to take the penalty, exactly, but neither a scruple more nor a scruple less, nor the 20th part thereof. Such Portian precision has no place in statutory construction.

A discrete number has no visible or physical existence apart from the medium on or in which it is stamped, imprinted, incised, inscribed, embossed, engraved, or otherwise depicted. Thus a VIN must necessarily be integrated in a part of the vehicle from which it came or for which it is intended, and it is impossible to sell a VIN without selling such part of that vehicle.

Defendant's position is at once an absurdity and an impossibility, and the law requires neither; we reject it.

■ "The cardinal rule of statutory construction is that a provision is to be construed so as to effect the intent of the Legislature. [Citations.] When determining legislative intent, the plain meaning of clear statutory language should be followed unless there is compelling evidence that another meaning [is] intended." (*People* v. *DePaul* (1982) 137 Cal.App.3d 409, 414 [187 Cal.Rptr. 82].) Moreover, "courts must give effect to statutes according to the ordinary import of the language used in framing them. [Citation.]" (*People* v. *Morris* (1988) 46 Cal.3d. 1, 15 [249 Cal.Rptr. 119, 756 P.2d 843].)

■ Mindful of the above principles, we find defendant's proposed narrow interpretation of Vehicle Code section 10752 to be directly contrary to the plain language of that section. The obvious legislative purpose to be served by section 10752 is to protect the public by proscribing the acquisition, possession, sale, or offer to sell of a VIN taken from a validly registered vehicle, or of a counterfeit VIN, which can then be affixed onto a stolen vehicle with the intent to perpetrate a fraud by sale of that re-numbered stolen vehicle to another person as a lawfully owned vehicle. The fact that the Legislature drafted section 10752 in terms of VINs "from or for, or purports [or purporting] to be from or for, a vehicle or component part thereof" reflects the Legislature's intent that the proscribed conduct not be limited to the sale of the discrete number alone, without and separate from any portion of the vehicle to which the VIN was affixed.

The language of the statute reflects the Legislature's understanding and concern that the fraud sought to be prevented might be perpetrated through the use of a portion of the vehicle to which the VIN is attached. Accordingly, we hold Vehicle Code section 10752 must be read to proscribe the acquisition, possession, sale, or offering for sale of a VIN from a vehicle, whether by itself or as affixed to some portion of the original vehicle.

We further find that such a narrow interpretation of Vehicle Code section 10752 is not mandated by the due process proscription against granting unfettered discretion to an officer in determining whether or not that section has been violated. ■ ■ If we were to assume, arguendo, that the

references to VINs in section 10752 are vague, section 10752 would nonetheless not be void for vagueness.[5] ■ A statute will not fail for vagueness if its terms can be made reasonably certain by reference to its purpose or resort to common sense. Nor will it fail as vague if it requires an adequately defined specific intent. (See, e.g., *People* v. *McCaughan* (1957) 49 Cal.2d 409, 414 [317 P.2d 974].) ■ Section 10752 is a specific intent offense and expressly requires the offender to possess the "intent to prejudice, damage, injure, or defraud." In view of the prerequisite specific intent, it is clear that section 10752 does not impermissibly grant an officer a carte blanche to arrest someone on a whim.

## II. *Amendment of Information During Trial*

■ Defendant's remaining claim concerns the amendment of the information ordered by the court during trial to charge him with selling a genuine VIN, instead of selling a counterfeit VIN, which was the original charge. He argues that such amendment was error since no evidence was presented at the preliminary hearing to the effect that the VIN was genuine but sold for a fraudulent purpose. (See § 1009.) He further argues that the amendment should not have been allowed since prejudice accrued from the fact his defense had been based on the allegation the VIN was a counterfeit. (See *People* v. *Witt* (1975) 53 Cal.App.3d 154, 164-165 [125 Cal.Rptr. 653].)

There was no error. The record contains substantial evidence to support the trial court's express finding that the People presented the theory of selling a genuine VIN, with a proscribed specific intent, at the preliminary hearing, and that defendant knew that he was charged with that criminal conduct.

Moreover, contrary to defendant's assertion otherwise, the amendment did not change the nature of the crime with which he was charged. Section

---

[5] At this juncture we reject defendant's overbreadth claim as untenable. He confuses the vagueness and overbreadth doctrines. He does not claim that Vehicle Code section 10752 proscribes both lawful and unlawful conduct, which is the nature of an overbreadth charge. Instead, he essentially complains that he cannot determine what conduct section 10752 proscribes, which is the thrust of a vagueness claim. (See *Hoffman Estates* v. *Flipside, Hoffman Estates* (1982) 455 U.S. 489, 497, fn. 9 [71 L.Ed.2d 362, 370-371, 102 S.Ct. 1186].)

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." (*Grayned* v. *City of Rockford* (1972) 408 U.S. 104, 108-109 [33 L.Ed.2d 222, 227-228, 92 S.Ct. 2294], fns. omitted.)

10752 defines the offense in terms of the selling of a VIN, whether counterfeit or genuine, for a fraudulent purpose. It is the sale or offer to sell, of a VIN, coupled with the intent to prejudice, damage, injure or defraud, that constitutes the crime of which defendant was convicted. Whether that VIN is genuine or counterfeit is not controlling. The selling of a counterfeit VIN or of a genuine VIN, coupled with the described specific intent, constitutes the crime and carries the same punishment. (See Veh. Code, § 10752, subd. (c), quoted in fn. 3, *ante.*) Accordingly, defendant knew the basic charge against him was the sale of a VIN for a fraudulent purpose. (See *People* v. *Garringer* (1975) 48 Cal.App.3d 827, 833-834 [121 Cal.Rptr. 922] [no prejudice from amendment since the substitution of one drug for another, both of which were named in the same statute, carried the same punishment and defendant knew he was on trial for possession of the substance in the capsules seized from his person, regardless of the actual nature of that substance].) Whether the VIN was counterfeit or genuine is not a controlling factor in the prosecution below or in this appeal and defendant does not present any substantive argument to show how his defense would have differed absent the amendment.

### DECISION

The judgment is affirmed.

Klein, P. J., and Croskey, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 23, 1990.