THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PETER M. DePALMA, Defendant-Appellant.

Second District   No. 2—92—0179

Opinion filed January 27, 1994.

DOYLE, J., dissenting.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers, Robert J. Biderman, and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

On January 29, 1992, the defendant, Peter M. DePalma, was charged by indictment with possession of a vehicle with knowledge that the vehicle identification number (VIN) had been removed, a Class 2 felony under the anti-theft provisions of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, pars. 4—103(a)(4), (b)) (now 625 ILCS 5/4—103(a)(4), (b) (West 1992))). The trial court denied the defendant's pretrial motion to declare the statutory provisions unconstitutional as overly broad and violative of the constitutional guarantees of due process and proportional penalties.

After a stipulated bench trial on February 13, 1992, the trial court found the defendant guilty of the charge and sentenced him to 18 months' conditional discharge and 41 days' confinement in the county jail; credit was given for the 41 days already served. Defendant's motion to reconsider the constitutionality of the provisions and in arrest of judgment was denied, and this timely appeal followed.

On appeal, defendant again contends that section 4—103(a)(4) of the Code is overly broad because it criminalizes innocent conduct and, in conjunction with section 4—103(b), which makes the offense a Class 2 felony, violates the constitutional guarantees of due process and proportionate penalties. (See U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §§ 2, 11.) Among other things, defendant argues in his initial brief that his conviction should be reversed because the evidence was insufficient to show that he possessed the vehicle with the missing identification number with knowledge accompanied by a criminal purpose. The parties were ordered to submit supplemental briefs to further develop the issue whether the evidence adduced at trial was sufficient to support a conviction beyond a reasonable doubt as to defendant's mental state, that is, whether defendant's conduct was accompanied by "criminal knowledge" or "knowledge plus criminal purpose" under *People v. Johns* (1992), 153 Ill. 2d 436, 441, and *People v. Tolliver* (1992), 147 Ill. 2d 397, 403. The State maintains that no "criminal intent" should be read into the statute defining the offense. We disagree and reverse defendant's conviction for the reasons that follow.

The record reveals that defendant was charged with the offense when he was found in possession of a gray 1985 Ford Mustang, bearing a Texas temporary buyer plate No. P—5748. According to the stipulated evidence, Officer Brian Siebrasse of the Village of Bloomingdale police department would testify that he responded to a police call on January 4, 1992, regarding a person who was sleeping in a car at the Meecham Forest Preserve. He went to the preserve and observed that the 1985 Mustang had no license plate, but had a

Texas temporary buyer dashboard plate registered to Intercontinental Auto Brokers of Houston, Texas. He observed that the dashboard vehicle identification number (VIN) plate appeared to be missing. He observed defendant sleeping in the car.

Siebrasse spoke with defendant, and defendant said he knew the VIN plates on the dashboard and door jambs were missing as they were removed when the vehicle was stolen from the previous owner. Defendant said that in the past couple of weeks he had been stopped by the Elk Grove police and the Rolling Meadows police in connection with the VIN plates. Siebrasse would also testify that defendant told him he was the lawful owner of the car at the time and had been sleeping in the car. According to Siebrasse, after a thorough inspection of the car, no VIN plates were located on the door jambs or engine of the vehicle.

On January 11, 1992, after a more thorough inspection of the car, a portion of a VIN plate was located under the passenger side quarter panel. The National Insurance Crime Bureau was contacted, and that bureau was able to reconstruct the VIN using the portion of the number that was located under the passenger quarter panel. The VIN matched the VIN that was on the temporary buyer plate, and it was determined that the car had been reported stolen in Orlando, Florida, and was recovered on May 3, 1991.

The testimony of Officer Syverson of the Elk Grove police department would show that, on November 28, 1991, he observed no VINs when he had an opportunity to stop the same vehicle and would identify defendant as the driver. At that time, defendant was told to take care of the VIN problem and obtain registration for the vehicle.

On the basis of the stipulated evidence, the trial court found defendant guilty of the offense charged and imposed an agreed sentence.

■ The offense in question is defined by section 4—103(a)(4), which provides:

"Offenses relating to motor vehicles and other vehicles— Felonies. (a) It is a violation of this Chapter for:
* * *
(4) A person to buy, receive, possess, sell or dispose of a vehicle, or any essential part thereof, with knowledge that the identification number of the vehicle or any essential part thereof having an identification number has been removed or falsified." (Ill. Rev. Stat. 1991, ch. 95½, par. 4—103(a)(4) (now 625 ILCS 5/4—103(a)(4) (West 1992)).)

A person convicted of a violation of that section is guilty of a Class 2 felony and may be imprisoned for not less than three, but not more than seven, years. Ill. Rev. Stat. 1991, ch. 95½, par. 4—103(b) (now

625 ILCS 5/4—103(b) (West 1992)); Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(5) (now 730 ILCS 5/5—8—1(a)(5)(West 1992)).

Section 4—103(a)(4) is part of a statutory scheme of anti-theft laws found in chapter 4 of the Code whose purpose " 'is to protect automobile owners against theft and to protect the general public against the commission of crimes involving stolen automobiles.' " (*People v. Morris* (1990), 136 Ill. 2d 157, 162, quoting *People v. One 1979 Pontiac Grand Prix Automobile* (1982), 89 Ill. 2d 506, 510.) Grouped under section 4—103 are offenses such as knowingly possessing, concealing, selling or disposing of a stolen or converted vehicle; knowingly removing, altering, defacing, destroying or falsifying a manufacturer's vehicle identification number or an essential part thereof; knowingly concealing or misrepresenting the identity of a vehicle or essential part thereof; and knowingly possessing, buying, selling or exchanging any manufacturer's vehicle identification number plate. See Ill. Rev. Stat. 1991, ch. 95$^{1}/_{2}$, par. 4—103(a) (now 625 ILCS 5/4—103(a) (West 1992)).

Defendant initially points out that conduct such as affirmatively concealing or misrepresenting the identity of stolen vehicles by changing, destroying or removing their VIN plates contributes to the serious problem of vehicle theft and this more culpable conduct is justifiably criminalized as a Class 2 felony. However, he argues that section 4—103(a)(4) is overly broad and unconstitutional because it criminalizes as a Class 2 felony the conduct of one who has no connection with a vehicle theft if he does no more than come into innocent possession of a vehicle with knowledge that its identification number has been removed. The statute criminalizes the mere possession of a vehicle which is missing its VIN plate by persons who need not have had anything to do with the removal of the plate—let alone any aspect of a vehicle theft. Furthermore, the penalty is disproportionate to the seriousness of the offense because it imposes the same penalty on one who innocently possesses a car with a missing VIN plate as one whose culpability is far greater because he knowingly possesses stolen vehicles, deliberately tampers with VIN plates or engages in other knowing involvement in vehicle theft.

Defendant points out that there was no evidence that he was not lawfully in possession of the vehicle and a police report included in the common-law record stated that the car was recovered in Florida and was now "clean." Defendant urges that one who takes possession of a car should not be expected to ascertain that the VIN plates belonging on the dashboard, engine, door jambs, main body compartment and other essential parts of the vehicle will all be in place and display the correct number. It is quite possible for a person to

purchase or come into possession of a car legitimately and only afterward discover that a VIN plate is gone, especially if the plate is missing from a location on the underside of the car. More importantly, defendant observes that a person who discovers that his car is missing a VIN plate would not be able to report that discovery to the Secretary of State or the State Police without admitting to the commission of a Class 2 felony.

■ The starting point in reviewing the constitutionality of statutes is that the statutes "are presumed constitutional and all reasonable doubts must be resolved in favor of upholding their validity." (*Johns*, 153 Ill. 2d at 442.) This court must construe acts of the legislature so as to affirm their constitutionality and validity if it can reasonably be done. (*People v. Steffens* (1991), 208 Ill. App. 3d 252, 258.) It is the party challenging the constitutionality of a statute that bears the burden of clearly establishing the constitutional violation. *People v. Bales* (1985), 108 Ill. 2d 182, 188.

The gist of defendant's argument is that the statutes defining and punishing the offense are overly broad because they arbitrarily and unreasonably penalize innocent conduct and therefore violate the principle of substantive due process. Alternatively, defendant argues that the penalty provided is disproportionate. Under the State's police power, the legislature has wide discretion to prescribe penalties for defined offenses. (*Morris*, 136 Ill. 2d at 161.) However, the legislature's exercise of the police power is constitutional only where the statute in question bears a reasonable relationship to the public interest to be protected, and the means adopted must be a reasonable method of accomplishing the desired objective. (*People v. Wick* (1985), 107 Ill. 2d 62, 65.) Otherwise stated, "the 'classification of a crime and the penalty provided [must] be reasonably designed to remedy the evils which the legislature has determined to be a threat to public health, safety and general welfare.'" (*People v. Toliver* (1993), 251 Ill. App. 3d 1092, 1100, quoting *People v. Bowen* (1993), 241 Ill. App. 3d 608, 629.) The determination of reasonableness is a matter for the courts (*Morris*, 136 Ill. 2d at 161), and the due process test "focuses on the purposes and objectives of the enactment in question" (*Johns*, 153 Ill. 2d at 445; *Morris*, 136 Ill. 2d at 162).

In *People v. Tolliver* (1992), 147 Ill. 2d 397, defendant was charged with the offense of possession of a title without complete assignment under section 4—104(a)(2) of the Code (Ill. Rev. Stat. 1989, ch. 95½, par. 4—104(a)(2) (now 625 ILCS 5/4—104(a)(2)(West 1992))), a related anti-theft law pertaining to the possession of titles and registration. Under that provision, the failure to complete the title and assign it to a specific person is against the law. In that case, the title owner

had signed the document, but the name of the buyer had not been filled in. After he purchased the car, Murphy, the buyer, noticed that the back of the title had been signed by David Hayes, but not by the defendant who sold the car to Murphy. Murphy tried unsuccessfully either to get the defendant to sign the title or get his money back. When Murphy complained to the Secretary of State, the State's Attorney of Montgomery County subsequently brought charges against the defendant.

The defendant argued that the statute was overly broad and a violation of due process because it punished innocent behavior where a person held an incomplete certificate of title with no intention of committing a crime. The court noted that Murphy, who purchased the car from the defendant, also could have been charged with a felony since he knowingly possessed the same incomplete title before he tried to return it. Because there were various scenarios possible during a transaction for the purchase of a vehicle where the parties could be in nonculpable or innocent possession of an incomplete assignment of title, the supreme court determined that such "innocent but knowing conduct, which is wholly devoid of devious intent, should not render a person guilty of a felony." *Tolliver*, 147 Ill. 2d at 402.

The *Tolliver* court observed that, while the State has a legitimate interest in preventing car theft through this type of statute, it has an equally important interest in protecting otherwise innocent conduct from criminal prosecution. Expanding on its prior decision in *People v. Gean* (1991), 143 Ill. 2d 281, to require that the offense contain a "knowledge" element, the *Tolliver* court modified the "knowledge" requirement it had read into the statute to mean that an accused could be convicted of the offense only if he possessed the incomplete title with a "criminal knowledge" or "knowledge with an intent to defraud or commit a crime," that is, "*knowledge plus criminal purpose*." (Emphasis added.) (*Tolliver*, 147 Ill. 2d at 400-01, 403.) Since there was no evidence that the defendant had a criminal purpose or that defendant stole the car or attempted to perpetrate a fraud, the supreme court reversed the trial court's finding of guilt and discharged the defendant.

■■ We believe that the analysis and rule of *Tolliver* should be followed in the instant case. The knowledge requirement of section 4—103(a)(4) of the Code must be read to mean "criminal knowledge," that is, "knowledge with an intent to defraud or commit a crime." Otherwise a possessor of a vehicle missing a VIN plate who had no criminal purpose whatsoever would be subject to a felony. Here, defendant, though aware of the missing VIN which was the result of a

prior theft, came into lawful possession of a vehicle with a temporary Texas buyer's registration. Neither the lawfulness of defendant's possession nor the registration has been challenged by the State. There is no evidence that defendant was involved in fraudulent or theft-related activity in connection with this vehicle.

If the statute is interpreted as the State suggests, persons with no criminal purpose who come into possession of a vehicle knowing that it has a missing or altered VIN tag would automatically be guilty of a Class 2 felony. Any attempt to report a VIN plate difficulty would constitute an admission to a felony, and there would be no legal protection or defense for anyone ensnared in this "catch-22." Therefore, we conclude that the knowledge requirement of section 4—103(a)(4) must be read to include the *criminal* knowledge requirement adopted by the supreme court in *Tolliver* in order to uphold the constitutionality of the statute on the basis of due process. Otherwise, we would be forced to conclude that there was no reasonable relationship between the statute creating this felony offense and the purpose of deterring theft or fraudulent conduct involving automobiles where it penalizes innocent conduct and precludes the acquisition of new VIN plates without the commission of a felony.

The dissent claims that *Tolliver* is distinguishable because that case involved possession of an incomplete certificate of title, whereas the present matter involves a missing VIN number. We disagree. The present case, like *Tolliver* and *Gean*, arises out of matters governed by the Illinois Vehicle Code. The supreme court in *Tolliver* did not limit its holding to the facts of that case. Indeed, the court clearly reaffirmed the general proposition that, absent a clear indication by the legislature to the contrary, "a felony penalty cannot be imposed for an absolute liability offense" (one which requires no guilty knowledge). (*Tolliver*, 147 Ill. 2d at 401.) As we pointed out earlier, *Tolliver* refined the holding of *Gean* to require "criminal knowledge" in cases involving auto registration.

Despite the dissent's contention to the contrary, we can readily envision cases in which persons may come into possession of vehicles with altered or missing VIN tags innocently. Further, we find the dissent's reliance on *People v. Brown* (1983), 98 Ill. 2d 374, inappropriate. *Brown* upheld the *misdemeanor* conviction of a defendant who was charged with possession of an automobile with a removed or falsified VIN number. That case was decided before the legislature imposed Class 2 felony punishment for this crime. It is because the crime now carries a *felony* sentence that we must insist that "criminal knowledge" be found for conviction.

In reaching this conclusion, we observe that this offense was originally considered regulatory or *malum prohibitum*, that is, an absolute liability offense without a *scienter* requirement carrying with it a misdemeanor penalty. (See *People v. Brown* (1983), 98 Ill. 2d 374.) Other jurisdictions have read knowledge with a criminal purpose or intent into similar statutes. (See *State v. Self* (Ala. Crim. App. 1986), 492 So. 2d 319 (firearm identification number analogized to VIN; possession with knowledge and intent to conceal or misrepresent identity of firearm read into statute to uphold constitutionality and felony penalty); see also *People v. Suk* (1990), 220 Cal. App. 3d 952, 269 Cal. Rptr. 676 (intent to prejudice, damage, injure or defraud expressly stated in statute). But *cf. Commonwealth v. White* (1978), 259 Pa. Super. 397, 393 A.2d 886 (requirement of criminal intent or guilty knowledge must be read into statute to justify *misdemeanor* status).) Thus, the State's argument that a higher culpable mental state should not be required is not persuasive, particularly where it relies on *Brown*, which upheld the constitutionality of the statute as a misdemeanor offense.

Since we have found the statute constitutional, we shall briefly address defendant's alternative contention that the statutory Class 2 penalty must be considered unconstitutionally disproportionate because defendant's conduct did not directly involve theft-related activity and the penalty is as severe as if he had knowingly possessed a stolen vehicle or deliberately tampered with the VIN plate. In *People v. Morris* (1990), 136 Ill. 2d 157, the defendant made a similarly successful argument. There, the defendant was charged with the Class 2 felony of knowingly possessing an altered temporary registration permit for his own vehicle. (Ill. Rev. Stat. 1987, ch. 95$^{1}$/$_{2}$, pars. 4—104(a)(3), (b)(2) (now 625 ILCS 5/4—104(a)(3), (b)(2) (West 1992)).) The trial court found the penalty unconstitutionally disproportionate to the offense committed by the defendant.

The supreme court observed that the defendant had altered the temporary registration permit on his own vehicle, but there was no evidence that the alteration contributed in any way to any vehicle theft-related crime. The court concluded that the trial court was correct in holding unconstitutional the penalty of a Class 2 felony for that offense and found the penalty violative of due process as applied to the facts of that case. The court also found the penalty violated the guarantee of proportionate penalties under the State constitution.

Article I, section 11, of the constitution provides: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship."

(Ill. Const. 1970, art. I, § 11.) The supreme court determined that the statute classifying the possession of an altered temporary registration permit (license-applied-for registration permit) at the same level as possession of a stolen motor vehicle by making both offenses Class 2 felonies violated the due process and proportionality requirements of the Illinois Constitution where the offense was committed by an owner of the vehicle and no theft has occurred. The court found no relationship between the offense when committed by one who owns or who is legally entitled to the vehicle and the legislative purpose of protecting automobile owners against theft or the general public against the commission of crimes involving stolen automobiles. *Morris*, 136 Ill. 2d at 167-68.

Here, the evidence shows that defendant had knowledge of the missing VIN and appeared to have been in lawful possession of the vehicle. There was no relationship between his conduct and the stated legislative purpose. Absent the higher criminal knowledge requirement which we have now read into section 4—103(a)(4) of the Code, the rationale in *Morris* would require finding the Class 2 felony penalty disproportionate as to the facts in this case if the defendant's conviction were to be affirmed in accord with the State's interpretation of the statute.

Under the facts of this case, we determine, pursuant to *Tolliver* (147 Ill. 2d 397), section 4—103(a)(4) of the Code is constitutional to the extent that it requires the offense to be committed with "criminal knowledge," that is, "knowledge with an intent to defraud or commit a crime." Since the stipulated evidence in the record was insufficient to show that defendant possessed this requisite criminal knowledge, his conviction must be reversed. Defendant is ordered discharged.

The judgment of the circuit court of Du Page County is reversed. Defendant is ordered discharged.

Reversed.

QUETSCH, J., concurs.

JUSTICE DOYLE, dissenting:

I respectfully dissent. I am concerned that today's interpretation of section 4—103(b) (625 ILCS 5/4—103(b) (West 1992)) may unnecessarily impair one of this State's most essential anti-vehicle theft measures. In my view, the decision contravenes precedent and is at odds with the facts.

A uniform system of vehicle identification numbers (VINs) has

long been a key tool in the detection and deterrence of vehicle theft. Manufacturers are required to place a unique, original vehicle identification number on each vehicle produced, as well as on certain parts of the vehicles. (See 625 ILCS 5/4—107(g) (West 1992).) Strong criminal penalties are imposed under both State and Federal law for removing, tampering, defacing, or destroying the numbers. (625 ILCS 5/4—103(a)(2) (West 1992); 18 U.S.C.A. § 511(a) (West Supp. 1993).) It is illegal to buy, receive, possess, sell or dispose of any vehicle with knowledge of a VIN deficiency (625 ILCS 5/4—103(a)(4) (West 1992)), and the law explicitly provides a procedure for affixing substitute VIN plates on a vehicle found in violation of these regulations (625 ILCS 5/4—107(h) (West 1992)). An important element of this system is the use of VINs in titling and registration.

By reference to a VIN, in conjunction with title, registration, and other documentation, the ownership history of any vehicle can be traced from the manufacturer. Computerized access to this information enables law enforcement agencies swiftly and conclusively to identify stolen vehicles.

It is apparent that the usual motive for knowingly removing, altering, defacing, destroying, or falsifying a VIN is to render a particular vehicle unidentifiable for purposes of tracing ownership, and it is commonly known that such acts are almost exclusively performed by auto thieves and "chop shop" personnel. In the context of the National Motor Vehicle Theft Act (commonly known as the Dyer Act) (18 U.S.C.A. §§ 2311 through 2313 (West Supp. 1993)), the changing of numbers on a motor vehicle has been held to constitute a concealment, which is not less purposeful or effective than physically hiding the vehicle itself to prevent its discovery by the owner or the officers of the law. See *Donaldson v. United States* (7th Cir. 1936), 82 F.2d 680, 681; Annot., 56 A.L.R.2d 1309, 1343 (1957); 7A Am. Jur. 2d *Automobiles & Highway Traffic* § 352, at 541 (1980).

Because the alteration and destruction of identification numbers is so inextricably related to the enterprise of vehicle theft, and considering the magnitude of this enterprise and the inherent investigative obstacles to curtailing "chop shop" and "retag" operations, the legislature has declared such conduct to be punishable as a Class 2 felony. (See 625 ILCS 5/4—103(b) (West 1992); see also 7A Am. Jur. 2d *Automobiles & Highway Traffic* § 353, at 542 (1980).) Without an effective VIN system, it may often be impossible to disprove a false claim of ownership by a suspected auto thief or, for that matter, to establish whether a particular vehicle has been stolen. Unlike an innocent irregularity which may be related to a vehicle's title, registration, and even its odometer, discovering that a

vehicle's VIN plates or impressions have been removed is a clear indication of previous theft.

The majority questions the validity of this law, as written, because it imposes punishment against individuals who "with no criminal purpose *** come into possession of a vehicle knowing that it has a missing or altered VIN tag." (256 Ill. App. 3d at 212.) This is, however, precisely the knowing conduct which the legislature has plainly intended to prohibit. There can be nothing either lawful or innocent about purchasing, receiving or possessing a vehicle with knowledge that its VINs have been removed or altered. To comply with the law, persons are required to avoid any transaction involving a vehicle known by them to be without proper VINs and, if any violation is subsequently discovered, to immediately affix replacement numbers pursuant to statute.

The importance of the VIN regulations has been recognized by the legislature and the courts of this State since the problems of auto theft emerged, and the constitutionality of such provisions has also been well established. (See generally 7A Am. Jur. 2d *Automobiles & Highway Traffic* § 353 (1980).) Early provisions in our laws have imposed penalties against those who possess vehicles without proper VIN markings, even lacking knowledge of any violation.

For example, in *People v. Billardello* (1925), 319 Ill. 124, Annot., 42 A.L.R. 1146 (1926), the defendant was charged with "unlawfully having the custody and possession of a motor vehicle the original engine number of which had been destroyed, removed, altered, covered and [*sic*] defaced." (*Billardello*, 319 Ill. at 125.) The defendant challenged the constitutionality of his conviction, arguing that he had purchased the vehicle in good faith with no knowledge that the engine number had been defaced. The court upheld the law, noting:

> "The legislature has deemed it necessary to the protection of the public from the evils arising from the unregulated use, sale and transfer of motor vehicles, from the crimes committed by their use, from the thefts to which they are so readily subject, to provide a system of registration and identification. This is in part based on the factory and engine numbers, which must be shown in the bill of sale which every manufacturer or dealer, on the sale of any motor vehicle, is required to give to the purchaser. The purchaser is required, within ten days, to apply to the Secretary of State for a certificate of registration, and his application must state the factory and engine numbers of the vehicle. *** Thus, if purchasers of motor vehicles will observe the plain provisions of the law, the ownership of any motor vehicle may be readily traced

from the manufacturer to the owner at any time. There is no hardship in requiring every citizen to observe the provisions of the law enacted for the protection of all citizens. *** By the exercise of reasonable care when he becomes the owner of a motor vehicle, a purchaser can assure himself that the factory and engine numbers have not been changed and that the provisions of the law have been complied with, or if they have not, he can decline to purchase." See *Billardello*, 319 Ill. at 127.

*Billardello* specifically recognized that there was a statutory method available under section 35 of the Motor Vehicle Act (1921 Ill. Laws 574), which allowed for the replacement VIN plates to be obtained from the Secretary of State if a person having possession of a motor vehicle discovered that its original engine number had, without his knowledge or consent, been destroyed, removed, altered, or defaced. (*Billardello*, 319 Ill. at 127-28.) This provision was recognized to afford protection to one who complied with the duty imposed by law and verified the existence of a proper VIN when he came into possession of a vehicle but later discovered that some subsequent, unlawful tampering with identification numbers by a third party had rendered the vehicle violative of the law. See *Billardello*, 319 Ill. at 128.

Prior to 1986, Illinois maintained two separate crimes related to the possession of motor vehicles with missing or altered VINs. The first, a misdemeanor, made it a violation for any person "to buy, receive, possess, sell or dispose of a vehicle *** if the manufacturer's identification number thereon has been removed or falsified, and such person has no knowledge that the number is removed or falsified." (See Ill. Rev. Stat. 1985, ch. 95$\frac{1}{2}$, par. 4—102(a)(3).) The second provided felony penalties if the individual did have knowledge of the tainted VIN. (See Ill. Rev. Stat. 1985, ch. 95$\frac{1}{2}$, par. 4—103(a)(4).) When section 4—102 was revised in 1986, the former absolute liability provision was deleted by the legislature (see Public Act 86—1209 § 4—102, eff. January 1, 1991), although its penalty provisions complied with the rule permitting the imposition of only misdemeanor sanctions for absolute liability offenses (see *People v. Tolliver* (1992), 147 Ill. 2d 397, 401) and its constitutionality had been clearly established (see *People v. Brown* (1983), 98 Ill. 2d 374).

Defendant's arguments in the present case are strikingly similar to those directly rejected by the Illinois Supreme Court in *Brown*. *Brown* analyzed the "no knowledge" misdemeanor offense formerly contained in section 4—102(a)(4) and recognized that the legislature's actions were designed "to inhibit both the profitability of the illegal stolen car market and the ease with which stolen automobiles and their parts are sold." (*Brown*, 98 Ill. 2d at 380.) The legislature had

determined that the focus of such efforts must be placed upon the possessors of vehicles with falsified or removed VIN plates as well as those who own, sell, and buy them (*Brown*, 98 Ill. 2d at 380).

Although the case law from *Billardello* to *Brown* would constitutionally permit the legislature to criminalize the possession of a vehicle with improper VINs, even in the absence of knowledge, the majority now holds that the present statute, which requires knowledge, can be validated only by our engrafting an additional element of "knowledge with intent to defraud or commit a crime." In requiring this additional element the majority relies by analogy upon *People v. Tolliver* (1992), 147 Ill. 2d 397. I do not find a valid analogy, however, between one's possessing an incomplete certificate of title, as discussed in *Tolliver*, and the possession of a vehicle without proper VINs. As *Tolliver* explains, there may be any number of innocent reasons why a certificate of title might be left incomplete. "Since it cannot be simultaneously signed and completely filled out instantaneously by all parties, the buyers, sellers or middlemen are at risk during the execution process. The execution process can be either stretched out or interrupted for a variety of innocent reasons." (147 Ill. 2d at 402.) The supreme court in *Tolliver* understandably refused to impose criminal liability in the absence of a showing of *scienter* where the potential for inadvertent violation was great. In my view, however, possession of a vehicle *with knowledge* that the identification numbers have been removed or altered cannot reasonably be characterized as an inadvertent or innocent act. Unlike temporary omissions which may occur in the execution of certificates of title, VINs are never routinely altered, removed, or destroyed as a part of the common practice of buying and selling vehicles. Knowledge is one of the alternative mental states required by section 4—3 of the Criminal Code of 1961 (720 ILCS 5/4—3 (West 1992); see also 720 ILCS 5/4—5 (West 1992)), and it appears to me to be an appropriate mental state applicable to the VIN statute in question.

I cannot agree with the majority that an individual who discovers that his vehicle is missing identification numbers is in the "catch-22" predicament of having no alternative other than admitting the commission of a felony. Such an individual is presumably in no worse position than the unsuspecting person who discovers that someone has placed cocaine in the trunk of his car. Provided that person, without unnecessary delay, contacts authorities to report his discovery, it cannot be said that he has knowingly possessed the contraband. On the other hand, if he fails to take prompt corrective steps but, instead, continues to operate his automobile with knowledge of its unlawful contents, he risks conviction of knowing

possession of a controlled substance, notwithstanding his initial lack of criminality in acquiring the substance.

Defendant in the present case had a similar alternative to his continued possession of the tainted vehicle, *i.e.*, having new VIN plates affixed pursuant to statute. (See 625 ILCS 5/4—107(h) (West 1992).) He elected not to comply but, instead, knowingly continued to violate the law by possessing the vehicle for more than a month after being notified by authorities of the violation. This case, therefore, does not involve an individual unwittingly trapped in an unavoidable situation, but rather a defendant who refused to comply with the requirements of the law despite being afforded ample opportunity to do so.

Under the majority's interpretation, there would apparently be no way for the State ever to compel defendant to comply with the VIN requirement. Under the same reasoning, except in the rare circumstance in which the State is able to prove "knowledge with intent to defraud or commit a crime," any person could possess with impunity one or more vehicles, knowing them to have been stripped of identification numbers. It appears questionable that the universal vehicle identification numbering system could continue to function in a State which cannot prohibit the act of possessing a vehicle with knowledge of missing or altered VINs.

In addition, the majority cites *People v. Morris* (1990), 136 Ill. 2d 157, as authority for concluding that the imposition of Class 2 felony penalties would be disproportionate to the seriousness of this offense in the absence of the additional element of an underlying criminal purpose. I do not read *Morris* as supporting that conclusion.

In *Morris*, the defendant was convicted of possessing a temporary vehicle registration permit ("license applied for sticker"), knowing it to have been altered, a Class 2 felony. (See 625 ILCS 5/4—104(b)(2)(West 1992).) The supreme court found that there was "no relationship between the offense of altering the temporary registration permit for a vehicle which one owns or to which one is legally entitled and the protection of 'automobile owners against theft' or 'the general public against the commission of crimes involving stolen automobiles.'" (*Morris*, 136 Ill. 2d at 168, quoting *One 1979 Pontiac Grand Prix*, 89 Ill. 2d at 510.) The court declared the Class 2 felony penalty to be disproportionate to the seriousness of the offense committed. (*Morris*, 136 Ill. 2d at 168.) In clear contrast, there exists a strong relationship between the State's need to require valid VINs on all vehicles and the protection of automobile owners against theft or the general public against the commission of crimes involving stolen automobiles. Although those committing such acts might

incidentally use altered temporary registration permits to facilitate their crimes, other arguably less culpable motivations exist for the same conduct, *e.g.*, to avoid paying the registration fee or outstanding parking tickets. The guiding principles enunciated by the supreme court in *Morris* would appear to support, rather than question, the legislature's authority to provide the potential for strong penalties when, as here, they are reasonably designed to remedy the serious public problems resulting from vehicle-theft-related crime.

In my opinion, *People v. Steffens* (1991), 208 Ill. App. 3d 252, is more directly instructive concerning the present proportionality issue. In *Steffens*, the defendant was charged with the Class 2 felony of knowingly possessing a rosette rivet (an item not available to the general public and used to attach VIN plates) which had not been attached to, or which had been removed from, the original vehicle. (See 625 ILCS 5/4—103(a)(5) (West 1992).) Defendant had possessed and resold such rivets as part of his Corvette restoration business, and he argued that the penalty classification violated the due process and proportionate penalty clauses of the Illinois Constitution. (See Ill. Const. 1970, art. I, §§ 2, 11.) Noting that possession of such rivets was of great value to car thieves and not available to or legitimately used by the general public, the court upheld the penalty provisions, and concluded that permitting unauthorized persons to possess rosette rivets would defeat the statute's purpose, and the Class 2 felony penalty was reasonably designed to effect the statute's purpose. *Steffens*, 208 Ill. App. 3d at 261-62.

The legislature has wide discretion, pursuant to the State's police power, to prescribe penalties for defined offenses. (*Morris*, 136 Ill. 2d at 161; *Steffens*, 208 Ill. App. 3d at 260-61.) It is in the best position to investigate and ascertain the evils confronting society and is more capable than a court of law in gauging the seriousness of various offenses. (*People v. Steppan* (1985), 105 Ill. 2d 310, 319; *Steffens*, 208 Ill. App. 3d at 261.) The courts, therefore, require as a matter of due process only that the penalty prescribed for a particular crime be reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety, and general welfare. (*Morris*, 136 Ill. 2d at 162; *Steppan*, 105 Ill. 2d at 319; *Steffens*, 208 Ill. App. 3d at 261.) On the other hand, the proportionate penalties clause of the Illinois Constitution requires that the legislature consider the constitutional goals of restoring an offender to useful citizenship and of providing a penalty according to the seriousness of the offense when defining crimes and penalties. (*People v. Johns* (1992), 153 Ill. 2d 436, 447.) A judicial determination of disproportionality is justified only if the punishment is cruel, degrading,

or so wholly disproportionate to the offense committed as to shock the moral sense of the community. *People v. Gonzales* (1962), 25 Ill. 2d 235, 240; *Steffens*, 208 Ill. App. 3d at 261.

I would find no lack of constitutional proportionality in the penalties provided for the offense in question. The State has a significant interest in insuring compliance with its VIN laws, and such laws are essential to address the substantial problems associated with vehicle theft. By providing a Class 2 felony penalty range for those persons who possess a vehicle knowing it to have altered or removed identification numbers, a trial court is vested with considerable discretion in sentencing. A sentencing court may impose a substantial prison term where a defendant has significant culpability, or may consider a sentence of probation or conditional discharge where, as here, mitigating factors are present. Aggravating factors, such as numerous prior convictions of similar offenses or direct ties to the auto theft industry, might warrant the consideration of a longer sentence within the three- to seven-year range. It is not unreasonable, in my view, for the legislature to have entrusted trial courts with this latitude.

Accordingly, I would affirm the judgment of the circuit court of Du Page County.