THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NATHANIEL PARKER, SR., Defendant-Appellant.

Fourth District    No. 4—94—0402

Opinion filed January 25, 1996.

586

Daniel D. Yuhas and Elizabeth D. Caddick, both of State Appellate Defender's Office, of Springfield, for appellant.

Barney S. Bier, State's Attorney, of Quincy (Norbert J. Goetten, Robert J. Biderman, and Timothy J. Londrigan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GARMAN delivered the opinion of the court:

Following a jury trial in the circuit court of Adams County, defendant Nathaniel Parker, Sr., was convicted of unlawful possession of a controlled substance (720 ILCS 570/402 (West 1992)) and permitting the unlawful use of a building (720 ILCS 570/406.1 (West 1992)). The court sentenced him to four years' imprisonment on each count, with the sentences to run concurrently. Defendant now appeals his conviction for permitting the unlawful use of a building, arguing the statute is unconstitutional and he was not proved guilty beyond a reasonable doubt. We affirm defendant's conviction.

In the late evening hours of September 14, 1993, members of the police department conducted a drug raid at a residence located at 832 North 11th Street in Quincy, Illinois. Defendant was present at the time, along with his girlfriend, Holly Scott, their two children, and several other people, including Eddie McKee. A pat-down search of defendant revealed a homemade pipe in his front pants pocket used for smoking crack cocaine. In what appeared to be a child's bedroom, police discovered eight small bags of cocaine hidden in a mattress. The police also discovered several pieces of mail addressed to defendant at 832 North 11th Street.

Defendant and Scott were arrested and charged with unlawful possession of a controlled substance and permitting the unlawful use of a building. Holly entered into a plea agreement with the State in which she pleaded guilty to permitting the unlawful use of a building in exchange for her testimony at defendant's trial. Defendant's trial was held on March 17, 1994.

At trial, Holly testified that defendant lived with her at 832 North 11th Street on the date of the drug raid. She also stated that her grandparents owned the home and rented it to her. She was responsible for paying the rent, while defendant worked for her

grandfather's plumbing business to pay for the utilities. Holly also testified that Eddie McKee began living at the house about three weeks before the raid. McKee sold drugs out of the house and provided Holly and defendant with drugs in exchange for staying there. However, McKee stopped supplying defendant with drugs after a week, but continued to provide them to Holly. Defendant became upset with McKee and wanted him to leave. Holly stated that she also wanted McKee out of the house. Nonetheless, McKee continued to stay at the house and sell drugs.

On cross-examination, Holly testified that defendant moved many of his personal belongings out of the house prior to the drug raid. However, on redirect examination, Holly stated that defendant continued to stay at the house and received his mail there, even after moving his belongings out. In her opinion, the residence at 832 North 11th Street continued to be defendant's home.

Deputy sheriff Randy Johnson testified that he interviewed defendant after his arrest. Defendant told him that McKee had been staying at the house to deal crack cocaine. In addition, defendant told Deputy Johnson that he did not live at the house, but stayed there occasionally. However, defendant also stated that he and Holly received drugs in return for allowing McKee to stay at the house and sell drugs.

Defendant testified at trial that he had moved from the residence at 832 North 11th Street one or two months before the drug raid and lived with his cousin, Marion French. He stated that he came over occasionally to help out with the children and saw McKee at the residence, although he was not aware McKee was living there. Further, he had no control or authority to tell people to leave. However, defendant also testified that he had previously ordered several people to leave the house. On cross-examination, defendant admitted that not only did he ask Holly to throw McKee out, he personally told McKee to leave. In addition, defendant received his mail at 832 North 11th Street.

The jury found defendant guilty on both counts, and the trial court sentenced him to concurrent terms of four years' imprisonment on each count. His timely appeal followed.

On appeal, defendant challenges his conviction for unlawful use of a building, contending (1) the statute is unconstitutionally vague; (2) the statute is unconstitutional because it is overly broad and punishes innocent conduct; (3) the statute is unconstitutional because it violates the prohibition against disproportionate sentences; and (4) he was not proved guilty beyond a reasonable doubt.

■ Section 406.1(a) of the Illinois Controlled Substances Act (Act) provides:

"Any person who controls any building and who performs the following act commits the offense of permitting unlawful use of a building:
Knowingly grants, permits or makes the building available for use for the purpose of unlawfully manufacturing or delivering a controlled substance." 720 ILCS 570/406.1(a) (West 1992).

In reviewing the constitutionality of a statute, we first note that statutes are presumed constitutional and all reasonable doubts must be resolved in favor of upholding their validity. (*People v. Johns* (1992), 153 Ill. 2d 436, 442, 607 N.E.2d 148, 151; *People v. DePalma* (1994), 256 Ill. App. 3d 206, 210, 627 N.E.2d 1236, 1239, *appeal denied* (1994), 156 Ill. 2d 560, 638 N.E.2d 1119.) A court will construe a statute as constitutional if it can reasonably be done. Further, the party challenging the statute has the burden of clearly establishing the constitutional violation. *People v. Hickman* (1994), 163 Ill. 2d 250, 257, 644 N.E.2d 1147, 1150; *People v. Bales* (1985), 108 Ill. 2d 182, 188, 483 N.E.2d 517, 519.

## I

We first address defendant's argument that the statute is unconstitutional for vagueness. He maintains that the language of the provision—specifically, "controls" and "grants, permits or makes the building available for use"—lacks sufficient definiteness to inform an individual what conduct is prohibited.

■ Due process requires that a statute provide sufficiently definite standards for law enforcement officers and fact finders so that its application does not depend on private conceptions. (*Hickman*, 163 Ill. 2d at 256, 644 N.E.2d at 1150; *People v. Fabing* (1991), 143 Ill. 2d 48, 53, 570 N.E.2d 329, 332.) However, neither the United States nor the Illinois Constitution requires absolute certainty. (*People v. Wawczak* (1985), 109 Ill. 2d 244, 248-49, 486 N.E.2d 45, 48.) A statute is measured by common understanding and practices and is not unconstitutionally vague if it gives a person of ordinary intelligence reasonable opportunity to know what conduct is unlawful. *People v. Haywood* (1987), 118 Ill. 2d 263, 269, 515 N.E.2d 911, 913; *People v. Bowen* (1993), 241 Ill. App. 3d 608, 616-17, 609 N.E.2d 346, 354, *appeal denied* (1993), 151 Ill. 2d 568, 616 N.E.2d 339, *cert. denied* (1993), 510 U.S. 946, 126 L. Ed. 2d 336, 114 S. Ct. 387.

■ We cannot accept defendant's argument. The language of the statute is not so vague that persons of common intelligence could not assess its meaning or application. The term "controls" and the phrase "grants, permits or makes the building available for use" are easily understood. The Act indicates to any reasonable person that anyone who knowingly allows his or her property to be used for unlawfully

590

manufacturing or delivering drugs will be guilty of a criminal offense. Thus, we find that the provision is not unconstitutionally vague.

## II

■ Defendant next argues the statute is unconstitutional because it is overly broad and penalizes innocent behavior. According to defendant, the statute allows for prosecution of individuals who have no "criminal knowledge."

Defendant's argument overlooks the very language of the statute itself. The statute provides that unlawful use of a building occurs when "[a]ny person *** *[k]nowingly* grants, permits or makes the building available for use for the purpose of unlawfully manufacturing or delivering a controlled substance." (Emphasis added.) (720 ILCS 570/406.1 (West 1992).) "A person knows, or acts knowingly *** when he is consciously aware *** that such circumstances exist." (720 ILCS 5/4—5 (West 1992).) Hence, in order to be guilty of permitting the unlawful use of a building, a person must be aware that another person to whom he makes the building available is using the building to manufacture or deliver illegal drugs. This "knowledge" element ensures that innocent behavior will not be punished.

Further, a statute is not overly broad where it bears a reasonable relationship to the public interest to be protected and the means adopted are a reasonable method of accomplishing the desired objective. (*People v. Wick* (1985), 107 Ill. 2d 62, 65, 481 N.E.2d 676, 678; *DePalma*, 256 Ill. App. 3d at 210, 627 N.E.2d at 1239.) The determination of reasonableness is a matter for the courts. *People v. Morris* (1990), 136 Ill. 2d 157, 161, 554 N.E.2d 235, 236.

Section 406.1 of the Act requires those who are in a position to control property to do so in a law-abiding manner. Through this statute, the legislature aimed to punish those individuals who allow their property to be used as drug houses. We believe such legislation is a reasonable attempt at deterring the distribution of controlled substances.

Therefore, we find the provision is not overly broad, nor does it punish innocent behavior.

## III

■ Defendant next contends the statute violates the Illinois Constitution's prohibition against disproportionate penalties. He argues that section 406.1 of the Act (permitting unlawful use of a building) and section 37—1 of the Criminal Code of 1961 (Code) (720 ILCS 5/37—1 (West 1992) (maintaining public nuisance)) prohibit the same acts yet have different penalties. Section 37—1 of the Code provides:

"[(a)] Any building used in the commission of offenses prohibited by [various sections] of the 'Criminal Code of 1961', *** the 'Illinois Controlled Substances Act', or the 'Cannabis Control Act' *** is a public nuisance.

(b) Sentence. A person convicted of knowingly maintaining such a public nuisance commits a Class A misdemeanor. Each subsequent offense under this Section is a Class 4 felony." (720 ILCS 5/37—1 (West 1992).)

Section 406.1 of the Act provides:

"(a) Any person who controls any building and ***:

Knowingly grants, permits or makes the building available for use for the purpose of unlawfully manufacturing or delivering a controlled substance [commits the offense of permitting unlawful use of a building].

(b) Permitting unlawful use of a building is a Class 4 felony." 720 ILCS 570/406.1 (West 1992).

■ Sentencing is unconstitutionally disproportionate when identical criminal offenses carry different penalties. (See *People v. Christy* (1990), 139 Ill. 2d 172, 181, 564 N.E.2d 770, 774.) However, the availability of different penalties for offenses that are similar or related, but not identical, does not violate the constitution. *People v. Wade* (1989), 131 Ill. 2d 370, 379, 546 N.E.2d 553, 557.

■ In this case, the provisions are similar; both prohibit the use of buildings for the commission of criminal offenses. However, the provisions are not identical. Section 406.1 of the Act, under which defendant was convicted, limits its prohibition to the use of buildings for the unlawful manufacturing or delivering of a controlled substance. In contrast, section 37—1 of the Code is much broader. It incorporates various offenses beyond the classification "unlawful manufacturing or delivering a controlled substance," such as possession of a controlled substance, prostitution, kidnapping, and gambling.

Thus, while an individual charged with permitting an unlawful use of a building could also be charged with maintaining a public nuisance, the opposite is not always true. Accordingly, the statutes are not identical and do not violate the constitutional prohibition against disproportionate penalties.

## IV

■ Last, defendant argues that the State failed to prove him guilty of permitting the unlawful use of a building beyond a reasonable doubt. He contends there was insufficient proof that he controlled the building.

A criminal conviction will not be reversed on appeal unless the

evidence is so improbable or unsatisfactory that it raises a reasonable doubt as to the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276.) The relevant question is not whether the reviewing court believes that defendant is guilty beyond a reasonable doubt, but whether after viewing the evidence in the light most favorable to the prosecution any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.

The jury was properly instructed that "control of a building means the power or authority to direct, restrict or regulate the use of the building." The evidence at trial showed that defendant (1) lived at the residence with his girlfriend and two children for over a year at the time of his arrest; (2) received his mail at the residence; (3) was responsible for paying utility bills at the residence; (4) previously ordered people to leave the residence; (5) received drugs from McKee in exchange for allowing him to stay at the residence; and (6) personally ordered McKee to leave the residence. From this evidence, any rational trier of fact could conclude beyond a reasonable doubt that defendant exerted control over the residence.

## V

For the reasons set forth above, we affirm defendant's conviction.

Affirmed.

STEIGMANN and McCULLOUGH, JJ., concur.