**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 230727-U

Order filed April 3, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0727 Circuit No. 21-CF-1036 |
| TOMAS A. WILLIAMS, | ) ) ) | Honorable Kenneth L. Zelazo, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Justices Holdridge and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  (1) The evidence was insufficient to disprove defendant's self-defense claim.
(2) The court erred in ordering defendant to pay restitution where the evidence failed to show that the losses were the cause of defendant's criminal conduct.
(3) The court's restitution order otherwise failed to comply with statutory requirements.

¶ 2    Defendant, Tomas A. Williams, appeals his convictions, arguing: (1) the State failed to disprove his affirmative defense of self-defense, (2) he received ineffective assistance of counsel, (3) his conviction for aggravated discharge of a firearm should be vacated because it violates the

one-act, one-crime rule, (4) the court imposed an improper double enhancement in sentencing him, and (5) the court's restitution award was erroneous. We affirm in part, vacate in part, reverse in part, and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4        Following a joint bench trial, defendant, along with his brother and codefendant, Neves Davis, were found guilty of aggravated battery (720 ILCS 5/12-3.05(e)(1) (West 2020)), two counts of aggravated discharge of a firearm (*id.* § 24-1.2(a)(2)), aggravated unlawful use of a weapon (AUUW) (*id.* § 24-1.6(a)(1), (3)(A-5), (3)(C)), and unlawful possession of firearm ammunition without a firearm owner's identification card (430 ILCS 65/2(a)(2) (West 2020)). They were acquitted of one count of aggravated discharge of a firearm that alleged they "knowingly discharged a firearm in the direction of a vehicle he knew to be occupied, to wit: a Jeep driven by Hannah Stigter."

¶ 5        At trial, the evidence tended to show that on the afternoon of July 19, 2021, defendant was walking home with Davis. On the way, someone yelled at them from the rear window of a passing vehicle travelling in the same direction.[1] The vehicle briefly stopped after passing defendant and Davis, then turned around and parked against a curb. The occupants then exited the vehicle wearing ski masks and advanced toward defendant and Davis. As the masked individuals approached, both Davis and defendant discharged firearms at them before fleeing. One individual, Alex Montgomery, sustained a gunshot wound to the chest.

¶ 6        First responders testified that Montgomery, identified as a white male with dreadlocks wearing a red beanie cap, was uncooperative and refused to provide information about what

---

[1]We adopt the facts laid out in Davis's appeal. See *People v. Davis*, 2025 IL App (3d) 230569-U. The facts herein thus mirror *Davis* and only include additional facts necessary for the issues raised in this appeal.

happened. Montgomery was transported to a hospital for treatment and released the same day. Montgomery did not testify as a witness during the trial.

¶ 7 Eight shell casings were discovered at the scene in addition to a partially loaded firearm magazine. Montgomery's vehicle was found parked "perfectly" alongside the curb with all the doors closed and the rear passenger window rolled completely down. A search of the vehicle yielded nothing of evidentiary value.

¶ 8 The driver of the vehicle, Logan Opiola, was granted immunity from prosecution by the State and compelled to testify after asserting his fifth amendment right against self-incrimination. According to his testimony, Opiola was driving Montgomery's vehicle when he realized he had forgotten something and needed to return home. While making a U-turn, Opiola heard gunshots and parked the vehicle. Opiola explained that he and Montgomery exited the vehicle and ran away on foot from the gunfire believing it would have been worse to stay in the vehicle and drive toward it. Montgomery was shot as they were running. Opiola stated that the shooters were approximately two houses away, but he did not see them. He testified that there were no guns or other occupants in the vehicle at the time and no one yelled from the vehicle at anyone.

¶ 9 Officers apprehended Davis at his home shortly after the incident. While detained in a squad car, Davis stated he was walking home alone when someone wearing a mask yelled at him from the window of a passing vehicle. The vehicle stopped and multiple occupants exited and began approaching him. As they approached, Davis discharged his firearm. When an officer indicated that Davis probably thought the occupants had a gun and he was just protecting himself, Davis replied that was exactly what happened. Davis told the police that he disposed of the gun in a trash can. Police recovered the firearms Davis and defendant discharged in a backpack located inside the bedroom closet of their home.

¶ 10    During a later interview at the police station, Davis indicated defendant was present during the incident and stated that there were three or four individuals that exited the vehicle. In response to being asked if he saw any weapons, Davis stated, "I didn't know what I saw, I just saw people approaching me with ski masks."

¶ 11    Defendant told the police that he was walking with Davis when someone yelled at them from the rear window of a passing vehicle. The vehicle turned around and the occupants jumped out. As the individuals "swarmed" around Davis and defendant it appeared that one individual was reaching into his pants in a manner consistent with retrieving a weapon. Defendant admitted to discharging his firearm at the individuals as they approached from 25 to 30 feet away before fleeing, believing that he could have been shot and killed if he had not run away.

¶ 12    Stigter testified that her vehicle was struck by gunfire during the incident. Stigter recalled seeing two males appearing to shoot at each other while slowly running down the sidewalk. Stigter noted that one man was holding something that looked like a gun. Stigter also stated that one man was wearing a grey shirt and the other was wearing a white or black shirt. Stigter sped away from the scene when she realized her vehicle had been struck.

¶ 13    Diane Wuestenfeld testified that a bullet struck her house. She observed three males running through her backyard after the shooting. One man appeared to have an abdominal wound. Jeffrey Bishop testified that his son's car was struck by gunfire while parked in front of Bishop's home. Bishop stated that just prior to hearing what he thought were fireworks, he saw two men walking by his house. After he heard the gunshots, Bishop briefly chased three individuals he saw running through his yard because he believed they had stolen items from his garage.

4

¶ 14        James Gutierrez testified that two men walked in front of his vehicle at an intersection and then turned around and began moving back in the same direction they had just walked. One man pulled a gun from his waistband after Gutierrez witnessed two individuals down the street yelling loudly and antagonistically.

¶ 15        Michael Smolik testified that he saw two individuals walk past his house. Both individuals were putting something in their pants, one had a gun and the other had what Smolik believed to be a package. A police officer that interviewed Smolik testified that Smolik never indicated that he saw any individuals with a gun or that he saw anyone put a gun in their pants. Smolik acknowledged during his cross-examination that he may not have told the officer he saw someone with a firearm.

¶ 16        Three doorbell camera videos from homes in the area were admitted into evidence. Two videos, taken from different angles, showed defendant as he jogged along the sidewalk carrying an object in his right hand. In the videos, defendant wore a white shirt, black pants, and red shoes. Shortly after defendant passed the cameras, Davis followed and appeared to be carrying an object. Davis was wearing a black tracksuit with white stripes over a white shirt. Another doorbell video from a different house captured Opiola ringing the doorbell and standing with Montgomery on the porch. Opiola was wearing a grey sweatshirt and a black cross-body bag. Montgomery was wearing a white shirt with a large bloodstain on one side and a red beanie cap.

¶ 17        Audio recordings from multiple 911 calls were introduced as evidence. Frank Castenda reported that he heard gunshots, but indicated he did not see anyone with a gun. Castenda stated he saw two males and that was one was wearing an orange mask that covered his face. Castenda described the mask as the kind that would be worn during the winter. The parties stipulated that

Castenda would testify that he observed two men exiting a vehicle. One man was wearing a neon orange mask and had an automatic handgun in his hand.

¶ 18 The court questioned defendant's subjective belief that his use of deadly force was objectively reasonable when he did not see a firearm. The defense's position was that the individuals exited their vehicle in an aggressive manner wearing ski masks and defendant believed they had a gun. The court found the evidence established that Montgomery and Opiola were the initial aggressors and defendant subjectively believed his life was in danger. The court noted that it was unbelievable that Opiola would have taken the time to park perfectly against the curb while attempting to run away from a shooting. However, the court found defendant's subjective belief regarding his need to use deadly force was not objectively reasonable.

¶ 19 After defendant was convicted, the court sentenced him to three concurrent terms of 10 years' imprisonment for his aggravated battery and aggravated discharge of a firearm convictions. Defendant received concurrent sentences of three years' imprisonment for his AUUW conviction and one year of imprisonment for possession of firearm ammunition. In so sentencing, the court noted that defendant had no criminal history. Defendant was additionally ordered to pay restitution to Stigter ($1,068.09) and Wuestenfeld ($1,140). Defendant appeals.

¶ 20                                   II. ANALYSIS

¶ 21 On appeal, defendant argues (1) the State failed to disprove his claim that he discharged his firearm in self-defense, (2) he received ineffective assistance of counsel as to his convictions for aggravated battery and aggravated discharge of a firearm, (3) his conviction for aggravated discharge of a firearm should be vacated because it violates the one-act, one-crime rule, (4) the court imposed an improper double enhancement in sentencing him when it considered a factor inherent in the offense of aggravated battery with a firearm, and (5) the court erred when it

ordered him to pay Stigter restitution and failed to consider his ability to pay. We first address defendant's claim that the State failed to disprove self-defense as our decision on that issue renders the majority of defendant's other claims moot.

¶ 22                                  A. Sufficiency of the Evidence

¶ 23        Once a defendant raises a claim of self-defense, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the elements of the charged offense. *People v. Gray*, 2017 IL 120958, ¶ 50. The elements necessary to establish self-defense are:

> "(1) unlawful force threatened against a person, (2) the person threatened was not the aggressor, (3) the danger of harm was imminent, (4) the use of force was necessary, (5) the person threatened actually and subjectively believed a danger existed that required the use of the force applied, and (6) the beliefs of the person threatened were objectively reasonable." *Id.*

See 720 ILCS 5/7-1 (West 2020). If the State negates any one of these elements, a defendant's self-defense claim cannot prevail. *Gray*, 2017 IL 120958, ¶ 50.

¶ 24        As with any other challenge to the sufficiency of the evidence, contentions that the State failed to negate self-defense require the reviewing court to determine, after considering the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found beyond a reasonable doubt that the defendant did not act in self-defense. *People v. Wilkinson*, 2018 IL App (3d) 160173, ¶ 36. A court of review will not retry the defendant, as the trier of fact is responsible for determining witness credibility, weighing the evidence, and drawing reasonable inferences therefrom. *People v. Holman*, 2014 IL App (3d) 120905, ¶ 56.

¶ 25       Here, the only element of self-defense the parties dispute is whether the evidence demonstrated defendant's beliefs were objectively reasonable. We note this court reversed Davis's convictions for aggravated battery and aggravated discharge of a firearm, concluding Davis established the requisite elements to prove self-defense under the circumstances. See *Davis*, 2025 IL App (3d) 230569-U, ¶ 28. We explained:

> "Although the court found that [Davis] subjectively believed it was necessary to defend himself and that Montgomery and Opiola were the initial aggressors, it ultimately determined that [Davis] was objectively unreasonable in his belief that deadly force was necessary because [Davis] never stated that he saw a gun and no gun linked to either Montgomery or Opiola was ever recovered. However, it is not imperative that the alleged attackers actually be armed for the use of deadly force to be legally justifiable. *People v. Foster*, 81 Ill. App. 3d 915, 922 (1980). Acts of self-defense utilizing deadly force are justified when a person 'reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony.' 720 ILCS 5/7-1(a) (West 2020); *Holman*, 2014 IL App (3d) 120905, ¶ 58. 'The decisive question is whether the defendant's belief that it was necessary to use deadly force was reasonable under the circumstances.' *Holman*, 2014 IL App (3d) 120905, ¶ 58.
>
> After reviewing the evidence presented at trial in the light most favorable to the State, we conclude that [Davis's] use of force was objectively reasonable based on the circumstances. [Davis] and [defendant] were approached while walking along the street by unknown individuals wearing ski masks. Because it

8

was summer, it can reasonably be inferred that the individuals were wearing the masks to conceal their identity for nefarious reasons. The masked individuals advanced on [Davis] and [defendant] after appearing to intentionally target them by aggressively yelling before stopping and turning their vehicle around to park. The menacing nature of this conduct made it objectively reasonable for [Davis] to believe that the individuals approaching them may have been armed and intended to cause great bodily harm or death. See *People v. Whiters*, 146 Ill. 2d 437, 444 (1992) (defendant's perception of danger, not actual peril, is dispositive as to reasonableness of defendant's belief that the use of deadly force was justified). [Davis] was not required to exercise perfect judgment under this perceived threat, even if he was mistaken. See *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 55; *People v. Shipp*, 52 Ill. App. 3d 470, 477 (1977)." *Id.* ¶¶ 27-28.

As defendant and Davis were convicted of the same offenses for the same acts, the same evidence appears of record as it was a joint bench trial (*id.* ¶ 26), and the same objective standard applies, we reverse defendant's convictions for aggravated battery and aggravated discharge of a firearm for the reasons expounded in *Davis*. Thus, we need not address the other issues defendant raises with respect to those convictions.

¶ 26                                    B. Restitution[2]

¶ 27        We next consider the propriety of the court's restitution order. Defendant argues the court erred in ordering him to pay restitution for the damage to Stigter's vehicle because the damage

---

[2]We note the court ordered defendant to pay restitution in its final sentencing order for aggravated battery, aggravated discharge of a firearm, and AUUW. While his convictions for aggravated battery and aggravated discharge of a firearm have been reversed, his AUUW conviction remains. Based on this and the failure of the parties to argue otherwise, we assume the restitution award still stands, even after our holding on the previous issue.

was not caused by any criminal conduct for which he was convicted. Specifically, defendant was acquitted of aggravated discharge of a firearm, which alleged he "knowingly discharged a firearm in the direction of a vehicle he knew to be occupied, to wit: a Jeep driven by \*\*\* Stigter." Defendant argues that the evidence suggests Opiola could have struck Stigter's vehicle. Defendant acknowledges that he failed to preserve this issue but correctly notes it is reviewable under the second prong of the plain error doctrine. See *People v. Hicks*, 181 Ill. 2d 541, 545 (1998) (providing "[t]he imposition of an unauthorized sentence affects substantial rights" and is reviewable pursuant to the plain error doctrine).

¶ 28        Section 5-5-6 of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-5-6 (West 2020)) provides that the court shall order restitution for all convictions for offenses in violation of the Criminal Code of 1961 or Criminal Code of 2012 where "the person received any injury to his or her person or damage to his or her real or personal property as a result of the criminal act of the defendant." The court must assess the expenses, losses, damages, and injuries "proximately caused by the same criminal conduct of the defendant." *Id.* § 5-5-6(b). However, the court may not impose restitution for charges upon which a defendant has been acquitted. *People v. Owens*, 323 Ill. App. 3d 222, 234 (2001). Generally, we review an order for restitution for an abuse of discretion. *People v. Cameron*, 2012 IL App (3d) 110020, ¶ 35. However, whereas here, defendant alleges the restitution is not authorized by statute, our review is *de novo*. *People v. Ford*, 2016 IL App (3d) 130650, ¶ 26.

¶ 29        Here, the court ordered defendant to pay Stigter $1,068.09 in restitution for the damage to her vehicle. While defendant's convictions for AUUW and possession of firearm ammunition still stand, we cannot say that the record supports that the damage to Stigter's vehicle was "proximately caused *by the same criminal conduct* of the defendant." (Emphasis added.) 730

10

ILCS 5/5-5-6(b) (West 2020). Stated another way, defendant was not convicted of any criminal conduct relating to the discharge of a firearm, which was the cause of damage to Stigter's vehicle. See, *e.g.*, *People v. Clausell*, 385 Ill. App. 3d 1079, 1082 (2008) (concluding that the court did not err in ordering defendant to pay the victim restitution for medical bills despite being acquitted of aggravated battery as the defendant was ultimately convicted of robbery for taking the victim's property by force, and therefore, the victim's loss was proximately caused by the same criminal acts of the defendant). Moreover, defendant was actually acquitted of the only charge relating to discharging a firearm in the direction of Stigter's vehicle. For these reasons, the court erred in ordering defendant to pay restitution in this regard as there was no evidentiary basis to support such an award. Having found error, we vacate the restitution award as it relates to Stigter. We note that defendant does not challenge the propriety of the restitution award as to Wuestenfeld and, therefore, has forfeited any such claim. Ill. S. Ct. R. 341(h)(7) ("Points not argued are forfeited ***."). We, thus, take no position on the appropriateness of that award.

¶ 30　　　　As a final matter, defendant argues the court failed to consider his ability to pay restitution when setting the manner and method of payment. The State confesses error.

¶ 31　　　　Section 5-5-6 of the Unified Code governs restitution determinations and orders. 730 ILCS 5/5-5-6 (West 2020). Subsection (f) mandates:

> "Taking into consideration the ability of the defendant to pay, including any real or personal property or any other assets of the defendant, the court shall determine whether restitution shall be paid in a single payment or in installments, and shall fix a period of time not in excess of 5 years, *** not including periods of incarceration, within which payment of restitution is to be paid in full." *Id.* § 5-5-6(f).

11

"Compliance with this statute is mandatory." (Internal quotation marks omitted*.) *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 82. If a circuit court fails to specify the manner of payment—installments or lump sum—or fails to specify the time for payment, then "the restitution order is fatally incomplete." (Internal quotation marks omitted.) *Id.* A restitution order that fails to comply with the statutory requirements must be remanded for the court to amend the restitution order. *People v. Lambert*, 195 Ill. App. 3d 314, 334 (1990).

¶ 32    In this case, the record shows the court did not provide whether restitution would be paid in a lump sum or installments nor did it set a timeline for payment. The court's written order is devoid of the same. We remand this matter for the limited purpose for the court to comply with the requirements of the Unified Code regarding restitution. See *Hibbler*, 2019 IL App (4th) 160897, ¶ 82; 730 ILCS 5/5-5-6 (West 2020).

¶ 33                                III. CONCLUSION

¶ 34    The judgment of the circuit court of Will County is affirmed in part, vacated in part, reversed in part, and remanded for further proceedings. We reverse defendant's convictions for aggravated battery and aggravated discharge of a firearm and affirm all other convictions. We vacate the restitution award as it relates to Stigter. We remand the matter for the court to comply with the statutory requirements for an order of restitution and amend the restitution order as to Wuestenfeld.

¶ 35    Affirmed in part, vacated in part, reversed in part, and remanded.